# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action Cause No.

THE FEDERAL SAVINGS BANK**,**

    Plaintiff,

**v.**

RAYMOND KEITH TEMPLETON, an individual; ASLAN HOME LENDING CORPORATION, and FLAGSTAR BANK FSB

    Defendants.

## COMPLAINT

Plaintiff The Federal Savings Bank, by its attorneys, complains as follows against defendants Raymond Keith Templeton, Aslan Home Lending Corporation, and Flagstar Bank:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff The Federal Savings Bank ("TFSB") is a federal savings bank organized and existing under the laws of the United States of America with its main office in Chicago, Illinois. TFSB is, therefore, a citizen of the State of Illinois.

2. Defendant Raymond Keith Templeton ("Templeton") is an individual who is a citizen and a resident of the State of Colorado.

3. Defendant Aslan Home Lending Corporation ("Aslan") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Denver, Colorado. Aslan is, therefore, a citizen and a resident of the State of Colorado.

4. Defendant Flagstar Bank FSB ("Flagstar") is a federal savings bank organized and existing under the laws of the United States of America with its main office in Troy, Michigan.

Flagstar is, therefore, a citizen of the State of Michigan.

5. Flagstar maintains an office at 400 E. Horsetooth Rd., Fort Collins, Colorado out of which it makes home mortgage loans. Colorado courts, and federal courts located in Colorado, therefore have general personal jurisdiction over Flagstar.

6. The transaction at issue in this case that involves Flagstar is a loan that was brokered by Aslan in Colorado to Flagstar in Colorado. This Court therefore has specific personal jurisdiction over Flagstar for this case pursuant to C.R.S. § 13-1-124(1)(a) because the claim against Flagstar arises out of Flagstar's transaction of business in Colorado.

7. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the plaintiff's claims occurred in district.

### COUNT I – BREACH OF CONTRACT
**(Against Templeton)**

1-8. TFSB realleges and incorporates by reference Paragraphs 1 through 8 of the Allegations Common to All Counts as Paragraphs 1 through 8 of Count I.

9. TFSB is in the business of, *inter alia*, originating home mortgage loans.

10. Flagstar is in the business of, *inter alia*, originating home mortgage loans.

11. Aslan is in the business of brokering home mortgage loans for lenders. One of the lenders for which Aslan acts a s a home mortgage loan broker is Flagstar.

12. From March of 2020 through July 31, 2021, Templeton was employed by TFSB in its Fort Collins, Colorado office as a loan officer originating home mortgage loans.

13. Effective July 31, 2021, Templeton resigned his employment with TFSB and subsequently became employed by Aslan in Colorado brokering home mortgage loans for lenders.

14. On March 2, 2020, Templeton entered into a written employment contract with TFSB, a copy of which is attached hereto as **Exhibit A**.

15. Section 3 of Templeton's employment contract with TFSB provides, in pertinent part:

> (a) You acknowledge that the Company is engaged in a personal service business involving relationships with clients, including Controlled Business Arrangements ("CBA") and Marketing Services Agreements ("MSA"), the success of which business depends in large part upon the undisturbed continuation of such relationships with clients, and that all goodwill created as a result of your contact with the Company's clients belongs to the Company. A Controlled Business Arrangement ("CBA") shall mean any relationship with a bank, realtor, developer, title company or any other entity for which the Company has entered into an agreement for a CBA for the providing of financing for the customers of the CBA. A Marketing Services Agreement ("MSA") shall mean an agreement with a bank, realtor, developer, title company or any other entity with which the Company has entered into an agreement to provide marketing services for the provision of financing for the customers of the parties to the MSA. You acknowledge that in the course of your employment with the Company, you have been and will become familiar with the Company's operations, trade secrets, customers, and clients and with other confidential information developed by and belonging to the Company, that such information coupled with the personal relationships and goodwill referenced in the preceding sentences of this subsection would enable you to compete unfairly against the Company during or upon termination of your employment with the Company.
>
> (b) Accordingly, except with the express written consent of the Company's Board of Directors, you agree that from the date on which you execute this Term of Employment through the period ending 12 months after your employment with the Company terminates, regardless of the reason for such termination, you will not take any action designed to diminish, interfere with, or terminate the Company's relationships with any parties to any MSA or CBA that is in effect within the 180 days preceding the termination of Employee's employment, nor will Employee take any action designed to cause, encourage or facilitate any party to such a CBA or MSA to enter into a formal business relationship with any other entity engaged in residential mortgage lending.

(c) From the date on which you execute this Term of Employment through the period ending 12 months after your employment with the Company terminates, regardless of the reason for such termination, you will not solicit, entice, cause, encourage, induce, facilitate, attempt to induce, aid or assist any other party or person in soliciting, inducing, facilitating, or attempting to induce: (1) any client or prospective client of the Company with whom you discussed potential loan options or scenarios in the twelve (12) months preceding termination of employment with the Company; (2) any person who provided confidential or proprietary information to the company within the preceding 12 months; or (3) any person who in the preceding 180 days closed a loan with the Company, to engage the services of another person or entity engaged in residential mortgage lending for the purpose of securing financing or refinancing of any residential mortgage loan.

(d) From the date on which you execute this Term of Employment through the period ending 12 months after your employment with the Company terminates, regardless of the reason for such termination, you will not entice, cause, encourage, induce, aid, assist or facilitate any employee to terminate their employment with the Company and/or become employed with another residential mortgage lender.

...

(f) You agree that in the event of any threatened, intended or actual breach of this Term of Employment by you, the Company will suffer irreparable damage, the exact amount of which may be impossible to ascertain, and for which the remedies at law may be inadequate, and for those reasons you further agree that the Company shall be entitled, in addition to reasonable attorneys' fees, costs and remedies otherwise available to the Company at law or in equity, to injunctions, both preliminary and final, enjoining and restraining such threatened, intended or actual breach, and you irrevocably consent to the issuance of such injunctive relief by any court of competent jurisdiction.

16. TFSB has fully performed all its obligations pursuant to Templeton's TFSB employment contract.

17. TFSB provides its loan officers, including Templeton while he was employed by TFSB, with leads for prospective borrowers. The leads are either purchased by TFSB or result from referral relationships that TFSB has established with referral sources such as home builders and realtors. A TFSB loan officer then works with those persons, if they express an interest in borrowing from TFSB, on their loan applications. The identities of the TFSB loan applicants, their contact information, and the information about those persons collected by TFSB as part of

the loan application process constitute valuable trade secrets of TFSB that TFSB.

18. While Templeton was employed by TFSB, TFSB provided him with a lead for a potential home mortgage loan to borrowers with the initials R.B. and B.S. who live in Fort Collins, Colorado. The lead was obtained by TFSB through Northstar Homes ("Northstar"). Northstar is a home builder with which, throughout the time that Templeton was employed by TFSB, had a marketing services agreement with TFSB pursuant to which Northstar referred home buyers in need of home mortgage loans. TFSB introduced Templeton to Northstar while Templeton was employed by TFSB. R.B. and B.S. began the loan application process with TFSB through Templeton while he was employed by TFSB.

19. Prior to the termination of his employment with TFSB, but after he had decided to leave TFSB and go to work instead for Aslan, Templeton arranged for the loan to R.B. and B.S. to be placed by Aslan with Flagstar, rather than for the loan to be made by TFSB. On July 23, 2021, Flagstar issued a loan estimate to the borrowers. A copy of that estimate, showing Templeton as the loan officer and Aslan as Flagstar's broker, is attached hereto as **Exhibit B**.

20. Templeton's arrangement through Aslan to have Flagstar make the loan to R.B. and B.S., rather than TFSB, constitutes a breach of his TFSB employment contract.

21. While Templeton was employed by TFSB, TFSB provided him with a lead for a potential loan to a borrower with the initials K.M. who lives in Arizona. K.M. began the loan application process with TFSB through Templeton while he was employed by TFSB.

22. Templeton is currently engaged in an effort, on behalf of Aslan, to place K.M.'s loan with a lender other than TFSB. In August of 2021, while employed by Aslan, Templeton asked K.M. for copies of her last two pay stubs. K.M. mistakenly sent them to Templeton's

former TFSB e-mail address.  A copy of K.M.'s e-mail dated August 29, 2021, responding to Templeton's request is attached hereto as **Exhibit C**.

23. Templeton's effort to place K.M.'s loan with a lender other than TFSB constitutes a breach of his employment contract with TFSB.

24. TFSB's policies prohibit employees from sending information about borrowers or potential borrowers from their TFSB e-mail accounts to their personal e-mail accounts or to any competitor.   To TFSB's knowledge, from the time he began his employment with TFSB to June 17, 2021, Templeton had never done so.

25. On June 17, 2021, Templeton began e-mailing information about borrowers on whose applications he had been working at TFSB to a personal e-mail account of his (keithtempleton@sbcglobal.net) and to his Aslan e-mail account (keitht@aslanhlc.com) which had been set up while Templeton was still employed by TFSB.  His purpose in doing so was to solicit those borrowers to use Aslan to place their loans with a lender or lenders other than TFSB, rather than to obtain their loans from TFSB.  Samples of those e-mails are attached hereto as **Exhibits D, E, F** and **G**.  The borrower information that Templeton sent to his personal e-mail account or to his Aslan e-mail account includes the following:

| **Date of E-mail** | **Borrower Initials** | **Borrower City and State** | **Borrower Information Sent** | **Northstar Customer?** |
|---|---|---|---|---|
| | | | | |
| 6/17/21 | S.G. and K.G. | Strasburg, CO | Purchase and sale agreement; site development plan | Yes |
| 6/28/21 | C.Y. | Aurora, CO | Borrower's W-2, passport, 1099, and loan application | No |

| | | | | |
|---|---|---|---|---|
| 6/28/21 | J.W. | Aurora, CO | W-2, photo ID, borrower summary | No |
| 6/28/21 | M.T. | Keenesberg, CO | W-2s, loan application, worksheet | No |
| 6/28/21 | M.S. | Englewood, CO | Photo ID, divorce agreement, W-2s, loan application | Yes |
| 6/28/21 | G.S. | Castle Rock, CO | Pay stub, W-2s, photo ID | No |
| 6/28/21 | S.P. | Pagosa Springs, CO | Construction loan documents, photo IDs, W-2s | No |
| 6/28/21 | A.M. | Alamosa, CO | W-2s, photo IDs, loan application | No |
| 6/28/21 | D.K. | Mount Sinai, NY | Photo ID, W-2, loan application | No |
| 6/28/21 | E.J. | Platteville, CO | Photo IDs, W-2s | Yes |
| 6/28/21 | G.G. and B.G. | Chamberlain, SD | Photo IDs, paystub, income tax return, loan application | No |
| 6/28/21 | R.F. | Georgetown, TX | Paystub, photo ID, employment verification | No |
| 7/13/21 | E.G. | Fort Lupton, CO | Photo ID, W-2s, quitclaim deed | No |
| 7/15/21 | T.K. | Ault, CO | Construction cost information | No |
| 7/19/21 | V.R. and T.R. | Platteville, CO | Income tax return, construction cost information | No |
| 7/19/21 | C.B. | Denver, CO | Photo ID, W-9, insurance certificate | No |

| 7/23/21 | R.B. and B.S. | Frederick, CO | Photo IDs, bank statements, lease, construction documents, insurance policy | Yes |
| --- | --- | --- | --- | --- |
| 7/26/21 | S.S. | Commerce City, CO | Paystub, W-2, asset information, photo ID, bank statements, income tax returns, veterans' benefit verification | No |
| 7/28/21 | R.Y. | Loveland, CO | Insurance policy, mortgage loan statement, phot IDs, income tax return, W-2 | No |
| 7/31/21 | K.T. | Cody, NE | Photo IDs, loan application, appraisal | No |
| 7/31/21 | D.T. | Liberty Hill, TX | Loan application | No |
| 7/31/21 | K.N. | Allen, TX | Loan application | No |
| 7/31/21 | J.J. | Pagosa Springs, CO | Loan application | No |
| 7/31/21 | W.G. | Pierre, SD | Loan application | No |
| 7/31/21 | J.F. | Parshall, CO | Loan application | No |
| 7/31/21 | E.C. | Littleton, CO | Loan application | No |

26. Templeton is continuing to work on placing loans for the borrowers listed in Paragraph 25 with a lender or lenders other than TFSB.

27. Templeton's taking and use of TFSB borrower information constitutes a breach of his TFSB employment contract.

28. On August 5, 2021, Templeton solicited Jake Hastings ("Hastings"), a TFSB loan officer with whom Templeton had worked at TFSB, to leave his employment at TFSB and go to work for Aslan. A copy of Templeton's August 5 text message to Hastings is attached hereto as

**Exhibit H**.

29. Templeton's solicitation of Hastings constitutes a breach of his TFSB employment contract.

30. TFSB has incurred damages as a direct and proximate result of Templeton's breaches of his TFSB employment contract.

WHEREFORE, plaintiff The Federal Savings Bank prays for judgment in its favor and against defendant Raymond Keith Templeton for compensatory damages in excess of $75,000, the precise amount of which will be proved at trial; costs of this action; and such other and further relief as the Court may deem just and proper.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### (Against All Defendants)

1-13. TFSB realleges and incorporates by reference Paragraphs 1 through 13 of Count I as Paragraphs 1 through 13 of Count II

14-16. TFSB realleges and incorporates by reference Paragraphs 17 through 19 of Count I as Paragraphs 14 through 16 of Count II.

17-18. TFSB realleges and incorporates by reference Paragraphs 21 and 22 of Count I as Paragraphs 17 and 18, respectively, of Count II.

19-21. TFSB realleges and incorporates by reference Paragraphs 24 through 26 of Count I as Paragraphs 19 through 21 of Count II.

22. At all relevant times, there was in force and effect in the State of Colorado, codified at C.R.S.A. § 7–74–101, *et seq.*, an act known as the Colorado Uniform Trade Secrets Act ("the Act").

23. The borrower information Templeton took from TFSB constitutes a trade secret of

TFSB's.

24. Templeton has misappropriated TFSB's trade secret information and has used some of that information to TFSB's detriment and to the benefit of himself, Aslan, and Flagstar.

25. Templeton acted as agent for Aslan, and Aslan's principal, Flagstar, in misappropriating TFSB's trade secrets. Aslan and Flagstar are, therefore, liable for Templeton's misappropriation under the doctrine of *respondeat superior*.

26. TFSB has taken reasonable steps to safeguard the secrecy of its information relating to potential borrowers by, among other things, restricting the availability of that information to those employees with a need to know it in order to perform their jobs who have been given credentials that allow those persons to access that information in TFSB's computer system.

27. Section 104 of the Act, C.R.S.A. §7-74-104, provides:

> (1) Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.
>
> (2) If the misappropriation is attended by circumstances of fraud, malice, or a willful and wanton disregard of the injured party's right and feelings, the court or the jury may award exemplary damages in an amount not exceeding the award made under subsection (1) of this section.

28. TFSB has sustained damages as a direct and proximate result of the misappropriation of its trade secrets.

29. The misappropriation of TFSB's trade secrets was attended by circumstances of malice and of willful and wanton disregard of TFSB's rights.

30. Section 105 of the Act, C.R.S.A. §7-74-105, provides:

If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney fees to the prevailing party.

31. TFSB has incurred attorneys' fees, and will continue to incur such fees, as a proximate result of the defendants' misappropriation of TFSB's trade secrets.

32. The misappropriation of TFSB's trade secrets was willful and malicious.

WHEREFORE, plaintiff The Federal Savings Bank prays for judgment in its favor and against defendant Raymond Keith Templeton for compensatory damages in excess of $75,000, the precise amount of which will be proved at trial; exemplary damages in the same amount as the award of compensatory damages; reasonable attorneys' fees; costs of this action; and such other and further relief as the Court may deem just and proper.

### COUNT III – INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS
**(Against All Defendants)**

1-21. TFSB realleges and incorporates by reference Paragraphs 1 through 21 of Count II as Paragraphs 1 through 21 of Count III.

22. TFSB had a reasonable expectation of entering into contracts with each of the persons who had expressed an interest in applying for a loan from TFSB.

23. Templeton's actions as described above constitute intentional and improper interference with TFSB's prospective contractual relationships.

24. Templeton's actions as described above were taken on behalf of his current employer and principal, Aslan, and on behalf of Aslan's principal, Flagstar, both of which are liable for such actions under the doctrine of *respondeat superior*.

25. TFSB has suffered damages as a direct and proximate result of Templeton's actions as described above.

26. The intentional interference with TFSB's prospective contractual relations was attended by circumstances of malice and of willful and wanton disregard of TFSB's rights.

WHEREFORE, plaintiff The Federal Savings Bank prays for judgment in its favor and against defendant Raymond Keith Templeton for compensatory damages in excess of $75,000, the precise amount of which will be proved at trial; exemplary damages in such amount as the Court may deep appropriate; costs of this action; and such other and further relief as the Court may deem just and proper.

                                       **THE FEDERAL SAVINGS BANK**

                                       By       /s/   Daniel S Hefter
                                                 One of Its Attorneys

Daniel S Hefter, IL No. 3127998
**HEFTER LAW, LTD.**
22 W. Washington
Suite 1500
Chicago, IL 60602
(312) 264-6565
dhefter@hefter-law.com

Duncan E. Barber, No. 16768
**OTTESON SHAPIRO LLP**
7979 E. Tuffs
Suite 1600
Denver, CO 880237
(720) 488-0220
dbarber@os.law

Dated: September 8, 2021